## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DOUGLAS A. KLING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **Case No.  10-3221-CM** |
| **JAMES R. BECK,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Douglas A. Kling, now a prisoner in the Lansing Correctional Facility, filed this civil rights action alleging that defendant James R. Beck used excessive force in violation of the Eighth Amendment when attempting to return plaintiff to his jail cell in the Marshall County Jail. The case is before the court on several motions: Defendant's Motion for Summary Judgment (Doc. 24); plaintiff's Motion for Enlargement of Time to File a Supplement to Plaintiff's Answer to Defendant's Motion for Summary Judgment (Doc. 28); Defendant's Motion to Strike (Doc. 31); and plaintiff's Motion for Leave of Court to Amend Pleading (Doc 32).  In the first motion, defendant asks the court to grant summary judgment on plaintiff's claims because defendant is entitled to qualified immunity.  After defendant filed a reply brief in support of his motion, plaintiff asked for additional time to file a supplement to his response brief.  Plaintiff then eventually filed a supplement, which defendant moved to strike.  Finally, plaintiff moved to amend his complaint to add claims.  The court will take up each of the motions below, but not in the order filed.

### I.    **Plaintiff's Motion for Enlargement of Time to File Supplement**

In response to defendant's reply brief to the pending summary judgment motion, plaintiff asked the court to give him additional time to supplement his response brief.  Essentially, plaintiff's

request amounts to a request to file a surreply.  Plaintiff states that he was unaware of the proper procedure for responding to a summary judgment motion, and that his failure to respond properly was due to excusable neglect because he has limited access to the law library and lacks knowledge about civil procedure.

Plaintiff acts pro se in this case.  "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *See Auld v. Value Place Prop. Mgmt. LLC*, No. 09-1139-EFM, 2010 WL 610690, at *2 (D. Kan. Feb. 19, 2010) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  It is not the district court's responsibility, however, to act as an advocate for the pro se litigant.  *See id.*  And a plaintiff's pro se status does not relieve him from complying with this court's procedural requirements.  *Barnes v. United States*, 173 F. App'x 695, 697 (10th Cir. 2006) (citations omitted); *see also Santistevan v. Colo. Sch. of Mines*, 150 F. App'x 927, 931 (10th Cir. 2005) (holding that a pro se litigant must follow the same rules of procedure as other litigants).

A surreply is only proper when a party presents new factual or legal arguments in a reply brief.  *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005); *see also Accounting Principals, Inc. v. Solomon Edwards Group, LLC*, No. 09-2085, 2010 WL 3199897, at *1 (D. Kan. Aug. 12, 2010) ("[S]urreplies are permitted only in rare cases with leave of court where a nonmoving party needs to respond to information raised for the first time in a reply brief.").  Defendant did not present new factual or legal arguments; defendant merely pointed out how plaintiff's response failed to comply with the Federal Rules of Civil Procedure.  A surreply is not warranted, and the court denies plaintiff's motion.

## II.     Defendant's Motion to Strike

Because the court denies plaintiff's motion for additional time to file a supplement, plaintiff's supplemental brief filed July 18, 2011, should be stricken from the record. Plaintiff did not receive leave from the court to file the supplement, and there is no basis for allowing plaintiff to file what is essentially a surreply. In any event, the document fails to comply with Fed. R. Civ. P. 56(c)(1), D. Kan R. 56.1(b)(1), or D. Kan. R. 56.1(d). Plaintiff did not support his denials of fact with evidence or citations to the record. Without support, plaintiff's assertions fail to properly controvert any of the factual allegations presented by defendant. Plaintiff's supplemental filing would therefore be ineffective in rebutting defendant's motion for summary judgment. In other words, plaintiff suffers no prejudice by the court's ruling here.

**III.    Defendant's Motion for Summary Judgment**

 *A.    Factual Background*

The following facts are taken largely from the relevant and properly supported facts that defendant submitted. Plaintiff's response brief does not comply with D. Kan. R. 56.1(b)(2). And even if the court were to consider plaintiff's supplemental brief, as mentioned above, it also fails to comply with the court's rule. Plaintiff did submit a short affidavit in support of his response brief, however, that the court will consider. It contains plaintiff's sworn account of the relevant events, and, although plaintiff did not refer to it in his brief as contemplated by the court's rules, the court determines that the interests of justice mandate its consideration. Plaintiff is advised that the court may not be so forgiving of his failure to comply with the rules in the future, however.

In June 2009, plaintiff was being held in the Marshall County Jail on attempted murder charges. He escaped from jail by waiting for a guard to open a door located directly east of the door to cell #10. When the guard opened the door, plaintiff and another inmate overpowered him and escaped from the building. Eventually plaintiff was caught, extradited back to the jail, and convicted

of charges related to his escape.

In August 2010, plaintiff was a detainee in cell #7 of the jail.  Although the jail had placed plaintiff on 24-hour lockdown because of his June 2009 escape, by August 2010, plaintiff was allowed to leave his cell for one hour each day.  His cell contains a phone, which was turned on at 9:00 a.m. on August 29, 2010.

At about 9:20 a.m. on August 29, 2010, defendant approached plaintiff's cell to let him out for his hour of recreation time.  Defendant was the only jailer on duty that morning.  Plaintiff asked whether defendant would wait an hour so that the phones would be on and plaintiff could call his parents.

Defendant told plaintiff that the phones were on, as it was after 9:00 a.m.  Plaintiff claimed that the phone in his cell was broken and asked to use the phone in the basement.  Defendant refused, telling plaintiff that he had access to several other phones on the ground floor—in cell #1 and cell #3.  Plaintiff became angry and repeated his request to use the basement phone, but defendant ignored plaintiff and let him out of his cell for his one-hour recreation time.  Defendant suspected that plaintiff might have an ulterior motive for wanting to use the basement phone.

Around 9:45 a.m., plaintiff began standing by the door located to the east of cell #10, which was the door that plaintiff escaped from in 2009.  Defendant was aware of what had happened in 2009, and ordered plaintiff to return to his cell.  Plaintiff refused and remained by the door.  Defendant then began pushing plaintiff toward his cell, using his body and arms, but plaintiff resisted by grabbing nearby door handles.  The dispatcher on duty heard the commotion and called for back-up.

At the same time the dispatcher called for back-up, defendant abandoned his effort to physically return plaintiff to his cell and exited the secured area of the jail.  Plaintiff returned to the

-4-

door by cell #10 and began kicking it.  Plaintiff's kicks broke the lock on the door, preventing the lock from re-engaging after the door had been opened.

At 10:00 a.m., another officer, Officer David Ohlde from the Marysville Police Department, arrived at the jail.  Officer Ohlde was also aware that plaintiff had charges of violence pending against him and that he had previously escaped from jail.

Defendant and Officer Ohlde entered the secured area.  Plaintiff was still standing by the door.  Defendant ordered plaintiff to return to his cell, but plaintiff again refused.  Defendant and Officer Ohlde strategically positioned themselves and simultaneously tried to grab plaintiff by the arms to escort him to his cell.  Plaintiff again resisted.  Defendant then used his stun gun on plaintiff.  The gun made a loud "clicking" noise, and both defendant and Officer Ohlde represent that they thought it was not delivering a shock to plaintiff's body.  The stun gun had no apparent effect on plaintiff.  Plaintiff states, however, that defendant "tased" him around twenty times.  He states that later that day, he noticed burn marks "all over" from the shocks.

Defendant returned his stun gun to his belt and grabbed plaintiff by one arm again.  The two men then began to move plaintiff, but plaintiff kicked the cellblock hallway door shut.  While they were trying to get plaintiff through the door, plaintiff broke free and attempted to elbow Officer Ohlde in the face.  Officer Ohlde was able to grab plaintiff in a bear-hug-type hold, and the two men began struggling on the ground.  While plaintiff was struggling with Officer Ohlde on the ground, defendant tried unsuccessfully to handcuff plaintiff.  Defendant therefore tried to use the stun gun on plaintiff again to stop his resistance.

Officer Ohlde then told plaintiff that he would release him if he agreed to return to his cell.  Plaintiff agreed, gave up, and returned to his cell.  Plaintiff did not immediately complain of any injuries.

At 10:10 a.m. that same morning, defendant returned to the cellblock.  At that time, plaintiff complained about internal bleeding and requested medical assistance.  Defendant called a nurse, who arrived at 10:35 a.m.  Defendant told plaintiff that for security reasons, plaintiff would need to remove his jumpsuit and put on handcuffs to be treated.  Plaintiff allegedly refused both.  Defendant states that he informed plaintiff that if he refused to "cuff-up" and remove his jumpsuit, his refusal would constitute a refusal of medical treatment.  According to defendant, plaintiff replied that he was tired and wanted to sleep.  But plaintiff contends that he asked defendant to bring the nurse to him and defendant refused to do so.  In any event, the nurse left without treating plaintiff.  Plaintiff was never treated for injuries related to the August 29, 2010 incident.  Plaintiff claims that he was repeatedly refused medical attention, but defendant maintains that plaintiff never requested further attention.

The nurse noted that it would be out of character for plaintiff to refuse medical care if he needed it, as he regularly made his medical needs known.  The Sheriff confirmed that plaintiff regularly complained of minor health problems.  The nurse also noted that if plaintiff suffered internal injuries, they would have become more painful and required medical treatment.  She further stated that if she believed that an inmate was in severe medical distress, she would insist on seeing the inmate.  The nurse did not see plaintiff on August 29, however, making it difficult for her to assess whether he was in severe medical distress.

On September 23, 2010, plaintiff filed a Petition for Writ of Habeas Corpus with the District Court of Marshall County, Kansas.  In his petition, plaintiff alleged that the Sheriff was unlawful when he returned plaintiff to 24-hour lockdown as a result of plaintiff's conduct on the morning of August 29, 2010.  The court denied plaintiff's petition, finding that "the restraint imposed upon the [plaintiff] for safety and security reasons is not wrongful.  The [plaintiff's] segregation is not a

constitutional violation."

**B.      Standard of Review**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**C.      Discussion**

Defendant raised the defense of qualified immunity.  The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Buck v. City of Albuquerque*, 549 F.3d 1269, 1277 (10th Cir. 2008).  The court can exercise its discretion in determining which qualified immunity prong to consider first: (1) violation of a constitutional right or (2) that the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Plaintiff claims that defendant used excessive force in returning him to his cell.  The test for excessive force is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (citation and internal quotation marks omitted); *see also Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).  The court balances the need for force with the force used.  *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996). Whether a prisoner suffered injury and the extent of any injury are relevant inquiries when

determining whether an Eighth Amendment violation occurred. *Wilkins*, 130 S.Ct. at 1187 (citing *Hudson*, 503 U.S. at 7). A push or shove with no discernible injury, for example, may not constitute excessive force. *Hudson*, 503 U.S. at 9–10. The constitutional question for the court is whether a defendant engaged in unnecessary and wanton infliction of pain. *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001). If a defendant caused a prisoner to suffer unnecessary and wanton infliction of pain, the prisoner need not allege significant physical injuries. *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992). And the court will not dismiss a claim merely because the alleged injuries are de minimis. *Wilkins*, 130 S. Ct. at 1178.

Because the uncontroverted evidence shows that plaintiff was combative and presented security concerns at the time of the incident, plaintiff bears an additional burden: When a prisoner challenges the use of force during a security measure, the prisoner must show a lack of plausible basis for believing the particular degree of force necessary. *Whitley*, 475 U.S. at 323. The prisoner must show more than "a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." *Id.* at 322.

If the court accepts defendant's version of the events, it would appear that defendant had a plausible basis for believing it necessary to use force. It would further appear that the level of force was appropriate and that defendant sustained no unnecessary or unwanton infliction of pain.

But plaintiff's affidavit tells a different story. While the court would be justified in ignoring plaintiff's version of the events based on his failure to follow proper procedure in responding to defendant's motion, the court believes that plaintiff has raised genuine issues of material fact and that it would be unreasonably harsh to ignore plaintiff's affidavit for procedural reasons. If defendant shocked plaintiff twenty times and ignored plaintiff's requests for medical treatment, then a reasonable jury could find a constitutional violation. Assuming that defendant (and others) did, in

fact, ignore plaintiff's requests for medical care, the court cannot tell whether plaintiff suffered injury or the extent of any injury.

The court concludes that there are genuine issues of material fact precluding the application of qualified immunity.  As plaintiff recounts the facts, the court must find that a constitutional violation may have occurred and that the right to be free from that violation was clearly established.

Defendant's citation of the doctrine of collateral estoppel also does not entitle him to summary judgment.  While the outcome of plaintiff's habeas case may suggest that defendant had a plausible basis for believing that force was necessary, it does not address the amount of force used, which is at issue here.

Finally, it appears by plaintiff's response that he has abandoned his state law claims.  (*See* Pl. Resp. Brief, Doc. 26, at 4 ("This Court correctly construed Plaintiff's claims as violations of his 8th Amendment rights.  Defendant's assertion that this is a tort claim shows he lacks understanding of this Court's construction.").)  But if plaintiff did not intend to abandon his claims, the court dismisses them for failure to comply with Kan. Stat. Ann. § 12-105b(d).  *Gessner v. Phillips Cnty. Com'rs*, 11 P.3d 1131, 1134 (2000); *Talavera v. Sw. Med. Ctr.*, No. 09-2572-JWL, 2010 WL 3001723, *3 (D. Kan. July 28, 2010).  Plaintiff does not allege that he has provided Marshall County with notice of a claim under Kan. Stat. Ann. § 12-105b(d).  Notice of claims under the Kansas statute is a jurisdictional prerequisite to bringing suit, *Christopher v. State ex rel. Kan. Juvenile Justice Auth.*, 143 P.3d 685, 691 (Kan. Ct. App. 2006), and without providing such notice, plaintiff cannot bring a claim against the employee of a municipality acting within the scope of his employment, *Reindl v. City of Leavenworth*, 361 F. Supp. 2d 1294, 1301 (D. Kan. 2005) (citation omitted).

**V.     Plaintiff's Motion to Amend**

Finally, the court takes up plaintiff's motion to amend.  Federal Rule of Civil Procedure 15(a)(2) provides that the court should freely allow amendments.  *See* Fed. R. Civ. P. 15(a)(2).  The plaintiff must attach the proposed pleading to his motion.  D. Kan. R. 15.1(a)(2).  But the court may deny amendment on the basis of futility.  *See Bauchman v. W. High Sch.*, 132 F.3d 542, 559 (10th Cir. 1997) (citation omitted).  "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson Cnty. Sch. Dist. No. R–1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) (citation omitted).

Plaintiff attached a list of amendments that he hopes to make to his complaint.  In his reply brief, however, he states that he does not intend for the amendments to replace his original complaint.  (*See* Doc. 34, at 2 ("Plaintiff's proposed amendments are not a substitute for his original complaint.").)  Plaintiff's motion does not comply with the court's local rule on amendment.  The court will not accept two documents meant to be read together as plaintiff's operative complaint.  For this reason, the court denies plaintiff's motion.

The court recognizes that defendant also claims that plaintiff's proposed amendment is futile.  Defendant claims—perhaps accurately—that plaintiff failed to exhaust his administrative remedies with respect to the proposed claims.  In support, defendant attached a copy of the jail rules, which purportedly describe the jail's grievance procedure.  The rules do not appear to be complete, though, and the court cannot identify the procedure that plaintiff was expected to follow.  At this time, therefore, defendant's argument fails.  Defendant may raise it again at a later time if appropriate.

Defendant also argues that plaintiff's proposed amendment is futile because he does not allege facts sufficient to show deliberate indifference to medical needs.  But because plaintiff did not attach a full proposed complaint, the court cannot make this determination now.

Finally, defendant argues that the proposed amendment is untimely because plaintiff

-10-

unreasonably delayed in seeking leave.  Plaintiff should be cognizant of the law cited in defendant's brief if he seeks leave to amend again.  Merely stating that the *Martinez* Report (filed on January 31, 2001) gave him new information is insufficient to justify waiting nearly six months to file a motion to amend.  If plaintiff has other reasons for the delay, he should fully explain them if he seeks amendment again.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 24) is denied in part and granted in part.  Defendant is granted summary judgment on any state law claims, but plaintiff's Eighth Amendment claim may proceed.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Enlargement of Time to File a Supplement to Plaintiff's Answer to Defendant's Motion for Summary Judgment (Doc. 28) is denied.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike (Doc. 31) is granted.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Leave of Court to Amend Pleading (Doc 32) is denied.

Dated this 29th day of September 2011, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**

-11-