## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DOUGLAS A. KLING,**

         **Plaintiff,**

                                        **Civil Action**

**v.**

                                        **No. 10-3221-CM-GLR**

**JAMES R. BECK,**

         **Defendant.**

### <u>MEMORANDUM AND ORDER</u>

The Court has under consideration a Motion for Leave to Amend (ECF No. 37), filed by *pro se* Plaintiff Douglas Kling.  For the reasons set out below, the motion is granted in part and denied in part.

**I.      Procedural History**

In November 2010, Plaintiff commenced this action against Marshall County Jailer James R. Beck.  The complaint alleged criminal threat and aggravated assault and battery that occurred on August 29, 2010, when Beck allegedly used a taser against Plaintiff multiple times.[1]  The Court granted Plaintiff permission to proceed in forma pauperis.  It also ordered a *Martinez* report,[2] which was received January 31, 2011.[3]

---

[1] *See* Compl. (ECF No. 1).

[2] *See* Order of Nov. 30, 2010, (ECF No. 4) at 2-6.  In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), the Tenth Circuit specifically approved a procedure whereby the district court orders an investigation and the filing of a report to aid in determining whether a prisoner complaint survives screening under 28 U.S.C. § 1915.

[3] *See* Def.'s *Martinez* Report (ECF No. 9).

On May 16, 2011, Defendant moved for summary judgment.[4]  That motion became ripe for ruling with the filing of a response from Plaintiff and a reply brief from Defendant in June 2011.[5]  Plaintiff then filed his first motion to amend his complaint.[6]  On September 29, 2011, the Court denied the motion to amend on procedural grounds, i.e., failure to attach a copy of the proposed amended complaint as required by local rules.[7] The Court also denied in part the motion for summary judgment.[8] It denied summary judgment on Plaintiff's excessive force claim, because "[i]f defendant shocked plaintiff twenty times and ignored plaintiff's requests for medical treatment, then a reasonable jury could find a constitutional violation."[9] But it granted summary judgment against Plaintiff's state law claims for his failure to comply with Kan. Stat. Ann. 12-105b(d).[10]

About three months later Plaintiff filed the instant motion to amend.[11]  Defendant opposes

---

[4]*See* ECF No. 24.

[5]*See* ECF Nos. 26 (response) and 27 (reply).

[6]*See* ECF No. 32.

[7]The Court also briefly considered arguments that the proposed amendment was futile and untimely, but did not rely on such arguments to deny the motion to amend.  *See* ECF No. 36 at 10-11.  With respect to the timeliness of the motion to amend, the Court noted:  "Plaintiff should be cognizant of the law cited in defendant's brief if he seeks leave to amend again. Merely stating that the *Martinez* Report (filed on January 31, 2001) gave him new information is insufficient to justify waiting nearly six months to file a motion to amend.  If plaintiff has other reasons for the delay, he should fully explain them if he seeks amendment again." *Id.* at 11.

[8]*See id.* at 8-11.

[9]*Id.* at 8.

[10]*Id.* at 9.

[11]*See* Mot. Leave Am. (ECF No. 37).

it.[12]  Plaintiff has filed no reply brief.  The motion is ready for ruling.

## II.  Legal Standard Applicable to Motion for Leave to Amend

Parties may amend pleadings "once as a matter of course" before trial if they do so within (A) twenty-one days of serving the pleading or (B) "if the pleading is one to which a responsive pleading is required," twenty-one days of service of a responsive pleading or a motion under Fed. R. Civ. P. 12(b), (e), or (f), whichever is earlier.[13]  Other amendments before trial are allowed "only with the opposing party's written consent or the court's leave."[14]  Courts "should freely give leave when justice so requires."[15]  Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"[16]

Courts may deny leave to amend, however, based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[17]  "Absent flagrant abuse, bad faith, futility of amendment, or truly inordinate and unexplained delay, prejudice to the opposing party is the key factor in deciding a motion to amend."[18]

---

[12]*See* Def.'s Mem. Opp'n (ECF No. 38).

[13] Fed. R. Civ. P. 15(a)(1).

[14] Fed. R. Civ. P. 15(a)(2).

[15]Fed. R. Civ. P. 15(a)(2); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962).

[16]*Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

[17]*Id.* (quoting *Foman,* 371 U.S. at 182).

[18]*Rubio ex rel. Z.R. v. Turner Unified Sch. Dist. No. 202*, 453 F. Supp. 2d 1295, 1307 (D. Kan. 2006).

In fact, the prejudice factor is the "most important" consideration in the decision.[19]  Typically, courts "find prejudice only when the amendment unfairly affects" a party's ability to prosecute or defend the lawsuit.[20]  This most often occurs when the amendment "raise[s] significant new factual issues" or arises from a different theory or subject matter than previously asserted.[21]   To justify denying leave to amend, the proposed amendment must "work an injustice" to an opposing party.[22]  The party opposing the amendment has the burden to show a basis for denial.[23]

Whether to allow a proposed amendment, after the permissive period, addresses the sound discretion of the court.[24]  "In exercising its discretion, the court must be mindful that the Federal Rules of Civil Procedure are designed to facilitate decisions on the merits rather than on pleading technicalities."[25]

## III.    Analysis

Plaintiff seeks to amend his complaint by adding four defendants and asserting claims for (1)

---

[19]*Minter*, 451 F.3d at 1207.

[20]*Id.* at 1208.

[21]*Id.*; *accord Acker v. Burlington N. & Santa Fe R. Co.,* 215 F.R.D. 645, 654  (D. Kan. 2003) (stating that prejudice means undue difficulty in prosecuting or defending a lawsuit due to "a change of tactics or theories on the part of the other party") (quoting *Heslop v. UCB, Inc.*, 175 F. Supp. 2d 1310, 1313 (D. Kan. 2001)).

[22]*United States v. Sturdevant*, No. 07-2233-KHV-DJW, 2008 WL 4198598, at *3 (D. Kan. Sept. 11, 2008) (quoting *Koch v. Koch Indus.*, 127 F.R.D. 206, 209-10 (D. Kan. 1989)).

[23]*See*, *e.g.*, *Acker,* 215 F.R.D. at 654 (prejudice); *Carefusion 213, LLC v. Prof'l Disposables, Inc.*, Civ. A. No. 09-2616-KHV-DJW, 2010 WL 4004874, at *5 (D. Kan. Oct. 12, 2010) (futility).

[24]*See Foman,* 371 U.S. at 182; *Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010); *Minter*, 451 F.3d at 1204.

[25]*Collins v. Wal-Mart, Inc.*, 245 F.R.D. 503, 507 (D. Kan. 2007).

4

excessive force under the Eighth or Fourteenth Amendments, (2) negligence and/or deliberate indifference, and (3) criminal threat.[26]  Defendant opposes the motion on grounds that Plaintiff unreasonably delayed seeking leave to amend and that the new claims are futile.[27]

**A. Delay**

A court may properly deny leave to amend on undue delay alone when there is no justification for failing to amend earlier.[28]  Plaintiff has provided no reason for his delay in moving to amend even though the Court previously instructed him to fully explain the reasons for his delay if he filed a later motion to amend.  That failure, however, does not mandate denial of the motion.

Although there has been delay, the inquiry is whether there has been undue delay that warrants denial of leave to amend.  That inquiry requires examination of the circumstances in this case.

In November 2010, the Court liberally construed Plaintiff's *pro se* complaint as asserting a claim of excessive force.[29]  It ordered a *Martinez* report and directed that "[n]o answer or motion addressed to the complaint shall be filed until the Martinez report . . . has been prepared."[30]  After filing of the *Martinez* report on January 31, 2011, and the answer by Defendant on February 22, 2011, Plaintiff sought appointment of counsel.  The Court denied that request on April 28, 2011.[31]

---

[26]*See* Proposed Am. Compl. (attached as Ex. to Mot. Leave Am.).

[27]*See* Def.'s Mem. Opp'n at 2.

[28]*See Hayes v. Whitman*, 264 F.3d 1017, 1026-27 (10th Cir. 2001).

[29]*See* ECF No. 4 at 3.

[30]*See id.* at 4-5.

[31]*See* Mot. Appoint Counsel (ECF No. 18); Order (ECF No. 23).

5

Defendant then filed a motion for summary judgment that became fully briefed on June 20, 2011.[32] About a month later Plaintiff moved in a procedurally deficient manner to amend his complaint. The Court denied that motion. A little over three months later Plaintiff filed the instant motion to amend.

In light of Defendant's answer, Plaintiff had twenty-one days from February 22, 2011, to amend his complaint without leave of court.[33] Plaintiff did not move to amend during that time. But he sought appointment of counsel on March 4, 2011. Under the facts of this case the Court does not find that Plaintiff unreasonably delayed his effort to amend, pending a ruling on his motion for counsel. Within about two weeks after the Court denied appointment of counsel, Defendant moved for summary judgment. That filing did not immediately prompt a motion to amend. But Plaintiff did move to amend about a month after the dispositive motion was fully briefed. At that point, Plaintiff had about three months of unexplained delay. Plaintiff delayed another three months or so before filing the instant motion, after the Court denied because of procedural defects his initial motion to amend. When Plaintiff filed his present motion, he had delayed six or seven months without adequate explanation.

The Court does not find that the six to seven months of unexplained delay in this case amounts to undue delay. It has entered no scheduling order to establish a precise deadline for amendments. Under the facts the Court finds no undue delay to warrant denial of the motion upon that ground.

### B. Futility

Courts may deny leave to amend on grounds of futility, if the proposed amendment "would

---

[32] *See* Def.'s Reply Mem. (ECF No. 27) (filed June 20, 2011).

[33] *See* Fed. R. Civ. P. 15(a)(1)(B).

be subject to dismissal for any reason."[34]  The party asserting futility of amendment has the burden to establish futility.[35]

When a party argues futility with respect to a proposed amended complaint, the court accepts the well-pleaded facts alleged in the complaint as true to determine whether the proposed claim would survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[36]  To survive such a motion, the claims asserted in a complaint must satisfy Fed. R. Civ. P. 8(a)(2).[37]  Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests."[38]

To plead a claim in compliance with Rule 8(a)(2), parties must provide "enough facts to state a claim to relief that is plausible on its face."[39]  Although "detailed factual allegations" are unnecessary, parties must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[40]  Alleged facts must "raise a right to relief above the

---

[34]*Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001); *accord Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007).

[35]*Deya v. Hiawatha Hosp. Ass'n, Inc.*, No. 10-CV-2263-JAR-GLR, 2011 WL 1698774, at *2 (D. Kan. May 4, 2011); *Carefusion 213, LLC v. Prof'l Disposables, Inc.*, Civ. A. No. 09-2616-KHV-DJW, 2010 WL 4004874, at *5 (D. Kan. Oct. 12, 2010).

[36]*Snyder v. Am. Kennel Club*, No. 08-4094-SAC, 2009 WL 395161, at *3 (D. Kan. Feb. 18, 2009).

[37]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

[38]*Id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

[39]*Id.* at 570; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[40]*Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678 (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

speculative level."[41]

Claims have facial plausibility when the pleader provides sufficient factual content to allow a "reasonable inference that the defendant is liable for the misconduct alleged."[42]  This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[43]  When pled facts are "merely consistent with" liability, the pleading falls "short of the line between possibility and plausibility" of being entitled to relief.[44]  Furthermore, when parties "have not nudged their claims across the line from conceivable to plausible," the claims are subject to dismissal.[45]

When resolving motions to dismiss under Rule 12(b)(6), courts determine whether the non-movant "is entitled to offer evidence to support the claims", not whether that party "will ultimately prevail."[46]  In sum, this Court may find a newly proposed claim futile, if viewing the well-pleaded factual allegations as true and in the light most favorable to the pleader, the pleading nevertheless contains insufficient facts to state a claim plausible on its face or otherwise fails as a matter of law.  When considering whether an original complaint survives a motion to dismiss, courts may consider

---

conclusions").

[41]*Twombly*, 550 U.S. at 555.

[42]*Iqbal*, 556 U.S. at 678.

[43]*Id.*

[44]*Twombly*, 550 U.S. at 557; *accord Iqbal*, 556 U.S. at 678.

[45]*Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 680.

[46]*Raytheon Aircraft Co. v. United States*, 501 F. Supp. 2d 1323, 1327 (D. Kan. 2007).

a filed *Martinez* report as part of the pleadings.[47]  To the extent a proposed amended complaint is

consistent with the *Martinez* report, the report may likewise be considered.  Of course, courts may

not rely on a *Martinez* report to resolve material disputed facts.[48]

Because Plaintiff proceeds *pro se*, his pleadings are liberally construed.[49]  So construed, the

proposed amended complaint asserts (1) a claim of excessive force against Jailer Beck, Daniel

Hargrave (Marshall County Sheriff), and the Marshall County Board of County Commissioners (the

Board); (2) a claim of criminal threat against those defendants; (3) claims of deliberate indifference

against those defendants, a county nurse (Sue Rhodes), and a Marysville Police Officer (David

Ohlde) who responded to a call for assistance; and (4) a claim of negligence against all defendants.

Plaintiff sues each defendant in both individual and official capacities.[50]  Defendant Beck argues that

all of Plaintiff's claims are futile except for the original excessive force claim against him.[51]

### 1. *Excessive Force*

The excessive force claim against the Sheriff and the Board would not survive a motion to

dismiss.  Plaintiff asserts this claim against these defendants only on the ground they are responsible

for their employees' actions.[52]  Plaintiff cannot maintain a plausible § 1983 action against these

defendants, however, on that theory.  A defendant may not be held individually liable under a theory

---

[47]*Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

[48]*See id.* at 1109, 1112-13.

[49]*See id.* at 1110.

[50]Proposed Am. Compl. at 2.

[51]Def.'s Mem. Opp'n at 3.

[52]Proposed Am. Compl. at 3.

of respondeat superior or vicarious liability – to hold a defendant liable, that defendant must have affirmatively participated or acquiesced in the constitutional violations.[53]  The proposed excessive force claim against the Sheriff and the Board are thus futile.

## 2.  *Criminal Threat and State Claims*

Plaintiff originally asserted a claim of criminal threat.[54]  The Court construed it as part of his claim of excessive force or as a state law claim.[55]  Negligence is also a claim that arises under state law.[56]  As the Court previously found, the claims under state law are subject to dismissal for failure to comply with Kan. Stat. Ann. 12-105b(d).[57]  The proposed amended complaint does not cure the deficiencies noted by the Court.  The proposed claims of negligence and criminal threat, therefore, are futile to the extent they are based on state law.[58]

## 3.  *Deliberate Indifference Regarding Medical Treatment*

Plaintiff also seeks to assert a claim of deliberate indifference against Sheriff Hargrave, Nurse Rhodes, and Jailer Beck for denying him medical treatment.  The Court has already suggested that

---

[53]*See Milligan-Hitt v. Bd. of Trustees of Sheridan Cty. Sch. Dist. No. 2*, 523 F.3d 1219, 1223 (10th Cir. 2008) (noting that § 1983 "rejects the tort principle of respondeat superior and does not subject municipalities to vicarious liability for the acts of their employees; municipal taxpayers are liable only for the municipality's own misdeeds"); *accord Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (discussing vicarious liability).

[54]Compl. at 3.

[55]*See* ECF No. 4 at 3; Mem. & Order (ECF No. 36) at 7-9.

[56]*See Gaston v. Ploeger*, 297 F. App'x 738, 740 (10th Cir. 2008).

[57]*See* ECF No. 36 at 9.

[58]As already construed by the Court, to the extent the criminal threat claim arises under § 1983, it is part of Plaintiff's excessive force claim.  Negligence is not cognizable under 42 U.S.C. § 1983.  *See Hailes v. Asbury*, No. 08-3048-SAC, 2008 WL 2152186, at *1 (D. Kan. May 21, 2008).

a claim for deprivation of medical care against Beck would survive summary judgment, based upon the affidavit of Plaintiff, submitted in response to the earlier motion for summary judgment.[59]  With respect to medical treatment, Plaintiff averred that after being tased about twenty times, he "noticed burn marks all over from the shocks" and was "very disoriented, experienced major pains and felt like [he] was bleeding internally."[60]  He also averred that Jailer Beck ignored his request for a nurse and instead reported that Plaintiff "refused medical treatment."[61]  Plaintiff further averred that, until he left the jail, he "was repeatedly refused medical attention."[62]  In his proposed amended complaint he alleges generally that Jailer Beck, Nurse Rhodes, and Sheriff Hargrave denied him medical treatment.[63]  He alleges more specifically that Jailer Beck denied him medical treatment and informed Nurse Rhodes that he was refusing it.[64]

Prisoners and pretrial detainees enjoy the same level of constitutional protection against denial of medical care, whether the Eighth Amendment applies because the alleged denial occurred after conviction or the Fourteenth Amendment applies because the alleged denial occurred prior to conviction.[65]  The analysis is the same under both Amendments.[66]

---

[59]ECF No. 36 at 8-9.

[60]*See* Aff. Kling (ECF No. 26-1).

[61]*Id.*

[62]*Id.*

[63]Proposed Am. Compl. at 2-3.

[64]*Id.*

[65]*Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir.2009).

[66]*Olsen v. Latyon Hills Mall,* 312 F.3d 1304, 1315 (10th Cir. 2002).

To establish a constitutional violation, a plaintiff must show deliberate indifference to a serious medical need.[67]  This entails showing that the defendant knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[68]  The medical need must be "objectively, sufficiently serious."[69]  A medical need meets this test when it "has been diagnosed by a physician as mandating treatment or . . .  is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[70]  The objective seriousness of the medical need depends on the alleged harm claimed, not the inmate's symptoms when the prison employees acted or failed to act.[71]  The displayed symptoms remain relevant, however, to the subjective component, i.e., whether the defendant knew of the risk to the prisoner and chose to disregard it.[72]  To satisfy the subjective component, a plaintiff must demonstrate that the defendant acted with a "sufficiently culpable state of mind."[73]

The proposed amended complaint alleges that Jailer Beck tased Plaintiff more than twenty times and that Beck, Hargrave, and Rhodes failed to provide him medical attention.[74]  He claims that

---

[67]*Martinez,* 563 F.3d at 1088.

[68]*Farmer v. Brennan,* 511 U .S. 825, 834 (1994).

[69]*Id.*

[70]*Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005).

[71]*See id.*

[72]*See id.*

[73]*Farmer,* 511 U.S. at 834.

[74]Proposed Am. Compl. at 2-3.

after hearing allegations of internal bleeding, Nurse Rhodes accepted "the word of Beck that Plaintiff was refusing medical attention."[75]  He alleges that Beck "intentionally misled Sue Rhodes into believing Plaintiff did not want medical attention."[76]  He further claims that Sheriff Hargrave ignored his repeated requests for medical attention and safety measures.[77]  The *Martinez* report contains the following additional uncontested facts:  (1) Beck heard Plaintiff complaining of internal bleeding about ten minutes after the tasing incident; (2) Beck called Nurse Rhodes from the Marshall County Health Department; (3) the Nurse left without treating Plaintiff that day; and (4) Plaintiff left the jail about two months later without receiving any treatment related to the tasing incident.[78]

Plaintiff's allegations fail to show a plausible constitutional violation against Nurse Rhodes for failure to render medical treatment.  The alleged facts show that she came to the jail on Beck's request to treat Plaintiff after the August 29, 2010 incident, but left without providing treatment because Jailer Beck told her that Plaintiff was refusing treatment.  The alleged facts do not show that Nurse Rhodes acted with a sufficiently culpable state of mind, given the information Beck provided to her.  Plaintiff has made no allegation that Nurse Rhodes knew of and ignored later requests for medical treatment.  His claim against her for alleged deliberate indifference rests solely on her alleged failure to render treatment on the date of the incident.  For the reasons already stated, that claim would not survive a motion to dismiss.

The proposed amended complaint also fails to show a plausible constitutional violation

---

[75]*Id.* at 2.

[76]*Id.* at 3.

[77]*See id.* at 2-3.

[78]Def.'s *Martinez* Report at 10-11.

against Sheriff Hargrave for failure to provide medical treatment.  There is no allegation that he was present after the tasing incident.  The allegations against the Sheriff consist only of a vague, conclusory statement that he ignored repeated requests for medical treatment and safety measures. Plaintiff does not allege what facts the Sheriff knew that should have prompted a call for medical treatment.  The alleged facts do not show that the Sheriff knew of and disregarded an excessive risk to the health or safety of Plaintiff.  Nothing of record indicates the Sheriff knew of facts from which he could infer the existence of a substantial risk of serious harm or that he drew such an inference. Non-specific allegations that a sheriff has ignored repeated requests for medical attention or safety do not provide a sufficient basis to find deliberate indifference for failure to provide medical care. This claim against the Sheriff would not survive a motion to dismiss.

As the Court suggested in its ruling on summary judgment, Plaintiff has provided sufficient allegations to support a claim against Jailer Beck for failure to provide medical treatment.

### 4.  *Deliberate Indifference Regarding Failure to Intervene*

Plaintiff also seeks to assert a claim of deliberate indifference against Officer Ohlde for failing to intervene or prevent allegedly excessive force by Jailer Beck.  He also contends that the Board should be held liable for the deliberate indifference of Officer Ohlde, because it is responsible for its employees actions.

Since at least 1984, "Tenth Circuit precedent clearly established . . . that a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983."[79]  Officers may be held liable even when they did not participate in the

---

[79]*Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) (citation omitted); *accord Mascorro v. Billings*, 656 F.3d 1198, 1204 n.5 (10th Cir. 2011); *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1283 (10th Cir. 2007).

use of excessive force, if they were "present at the scene" and "fail[ed] to take reasonable steps to protect the victim."[80]  Under the facts alleged, Plaintiff has stated a plausible claim against Officer Ohlde for failing to take reasonable steps to protect Plaintiff from allegedly excessive force by Jailer Beck.  Because the proposed amended complaint alleges sufficient facts to assert liability against Officer Ohlde as a bystander, the proposed claim would survive a motion to dismiss and is not futile to that extent.  The proposed claim would not survive dismissal, however, to the extent it is asserted against the Board on a theory of vicarious liability or respondeat superior.[81]  The Board cannot be held liable under § 1983 for the actions of its employees or subordinates.

### 5. *Official Capacity Claims*

Although Plaintiff states that he sues each defendant in an individual capacity, he alleges no facts to support any official-capacity claim.  An official-capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent.[82]  Asserting official-capacity claims against county employees like Jailer Beck, Sheriff Hargrave,[83] and Nurse Rhodes or other municipal employees like Officer Ohlde is simply another way of suing the

---

[80]*Mascorro*, 656 F.3d at 1204 n.5.

[81]*See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); *Milligan-Hitt v. Bd. of Trustees of Sheridan Cty. Sch. Dist. No. 2*, 523 F.3d 1219, 1223 (10th Cir. 2008).

[82]*See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[83]Sheriffs in Kansas act as agents of the county in which they are employed, not the State. *Reyes v. Bd. of County Comm'rs of Sedgwick Cty., Kan.*, No. 07-CV-2193-KHV, 2008 WL 2704160, at *9 (D. Kan. July 3, 2008), *aff'd sub nom. Reyes v. Bd. of Cty. Comm'rs of Cty. of Arapahoe*, Colo., 311 F. App'x 113 (10th Cir. 2009).

municipality,[84] in this case Marshall County or the City of Marysville.  Likewise, asserting any claims (individual or official capacity) against a Board of County Commissioners is equivalent to suing the county.[85]  Official-capacity claims against the Sheriff and other county employees are subject to dismissal as redundant of claims against the Board.[86]

A municipality or other local government may be liable under 42 U.S.C. § 1983 only when it has deprived a person of his or her constitutional rights or has caused "a person to be subjected to such deprivation."[87]  Governmental entities are liable under § 1983 "only for their *own* illegal acts," not for the actions of their employees under a theory of vicarious liability.[88]  The injury to the plaintiff must be caused by action pursuant to an official municipal policy – including decisions by the government's lawmakers, acts of policymaking officials, and widespread and persistent practices that essentially have the force of law.[89]  When the official policy is premised on the acts of policy-making officials, municipal liability does not attach unless "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."[90]  To survive a motion to

---

[84]*See Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (county employees); *Nasious v. Littleton Police Dep't*, 366 F. App'x 897, 898 (10th Cir. 2010) (city employees).

[85]*Reyes*, 2008 WL 2704160, at *7.

[86]*Smith v. Bd. of Cty. Comm'rs of Cty. of Lyon*, 216 F. Supp. 2d 1209, 1220 (D. Kan. 2002).

[87]*Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).

[88]*Id.* (citations omitted); *accord Milligan-Hitt v. Bd. of Trustees of Sheridan Cty. Sch. Dist. No. 2*, 523 F.3d 1219, 1223 (10th Cir. 2008).

[89]*Connick*, 131 S. Ct. at 1359.

[90]*Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

dismiss on a claim for municipal liability, the plaintiff "must identify a municipal policy or custom that was the moving force behind the constitutional deprivation."[91]

Plaintiff has not alleged that any defendant acted from any official municipal policy or custom.  He has not alleged that his injuries resulted from any policy or custom.  He has identified no widespread and persistent practice.  Nor has he identified any individual as a policymaking official or any policy or custom that was the moving force behind his alleged constitutional deprivations.  With respect to the Board, he merely alleges vicarious liability.[92]  Although the Sheriff is a final policymaker under Kansas law,[93] and Plaintiff alleges some personal involvement by the Sheriff with respect to his claim of deliberate indifference, i.e., alleging that the Sheriff "ignored repeated requests for medical aid and safety from Beck," Plaintiff otherwise seeks to hold the Sheriff liable only vicariously as a person responsible for the actions of his employees.  Not all actions taken by a final policymaker imposes liability on the governmental entity.  As already discussed, the limited personal involvement alleged by Plaintiff is insufficient to sustain an action against the Sheriff in his individual capacity.  The allegations are likewise not sufficient to sustain an action against him in his official capacity.  For all of these reason, Plaintiff has asserted no official-capacity claim that would survive dismissal.

## C.  Conclusion

For the foregoing reasons, the Court grants in part and denies in part the Motion for Leave

---

[91]*Creamer v. Smith County Sheriff Dep't*, No. 11-4066-WEB, 2011 WL 5024224, at *3 (D. Kan. Oct. 20, 2011).

[92]Plaintiff premises all of the proposed claims against the Board on its alleged responsibility for its employees.

[93]*See Meyer v. Nava*, 518 F. Supp. 2d 1279, 1287 (D. Kan. 2007).

17

to Amend (ECF No. 37).  Within twenty-one days of the date of this Memorandum and Order, Plaintiff may prepare, sign, and file an amended complaint in the form attached.  For the convenience of the parties and to avoid additional delay in proceeding with this case, the Court has simply modified the proposed amended complaint to delete language inconsistent with the rulings herein. The Court otherwise denies the motion.  It does not grant leave for an amended complaint to include any other claim or defendant or to add allegations.  By this Memorandum and Order, furthermore, the Court is making no ruling as to the adequacy of the Amended Complaint against any further motion that may be directed against it.  It merely grants Plaintiff leave to file an amended complaint in the attached form with an address that Plaintiff should add for David Ohlde, so that he may be properly served with the amended complaint.

**IT IS SO ORDERED**.

**Dated in Kansas City, Kansas on this 15th day of May, 2012.**

**s/Gerald L. Rushfelt**
**Gerald L. Rushfelt**
**U.S. Magistrate Judge**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DOUGLAS A. KLING,**
     **Plaintiff,**

                **Civil Action**

**v.**

                **No. 10-3221-CM-GLR**

**JAMES R. BECK and DAVID OHLDE,**
     **Defendants.**

### AMENDED COMPLAINT

### A.  JURISDICTION

1)   Douglas A. Kling, is a citizen of Kansas who presently resides at Lansing Correctional Facility.

2)   Defendant James R. Beck is a citizen of Marysville, KS, and is employed as MS County Jailer.  At the time the claim(s) alleged in this complaint arose, this defendant was acting under the color of state law, because he was on duty at Marshall County Jail.

3)   Defendant David Ohlde is a citizen of Marysville, KS, and is employed as Marysville Police Officer.  At the time the claim(s) alleged in this complaint arose, this defendant was acting under the color of state law, because he was responding officer to assistance call.  He may be served at the following address: _____

_____.

4)   Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(3); 42 U.S.C. § 1983.

### B.  NATURE OF THE CASE

1)   On or about the 29th day of August, 2010, the Plaintiff was threatened with physical harm by James Beck, who later tased the Plaintiff in excess of 20 times.  David Ohlde failed to intervene while Beck used excessive force.  Plaintiff requested medical attention.

## C.  CAUSE OF ACTION

1)      I allege that the following of my constitutional rights, privileges or immunities have been

violated and that the following facts form the basis for my allegations:

A) (1) Count I:  Eighth Amendment/Fourteenth Amendment violations of excessive force

and/or cruel and unusual punishment and due process of law.

(2)  Supporting Facts:  On or about August 29th, 2010, James Beck tased Plaintiff

excessively while Plaintiff was a pretrial detainee in the Marshall County Jail.  On or about

the 29th day of August, 2010, James Beck did intentionally and unlawfully threaten the

Plaintiff with physical harm.

B) (1) Count II:  Deliberate indifference.

(2)  Supporting Facts:  On or about August 29th, 2010, David Ohlde had the duty to prevent

the excessive force and failed to intervene.  James Beck had the duty to provide medical

attention to the Plaintiff and failed in that duty.  James Beck intentionally misled Sue Rhodes

into believing Plaintiff did not want medical attention.

## D.  PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1)      Have you begun other lawsuits in state or federal court dealing with the same facts involved

in this action or otherwise relating to the conditions of your imprisonment?    No   .

2)      I have previously sought informal or formal relief from the appropriate administrative

officials regarding the acts complained of in Part C.    Yes   . If your answer is "Yes",

briefly describe how relief was sought and the results:  Letters were written to the sheriff on

several occasions due to lack of grievance system in the jail.  I am no longer in custody of

Marshall County Jail.

2

## E.  REQUEST FOR RELIEF

1)  I believe that I am entitled to the following relief:

Compensatory damages in the amount of $50,000 from each Defendant jointly and severally.

Punitive damages against Ohlde for $50,000.

Punitive damages against Beck for $250,000.

Plaintiff's costs in this suit, jointly and severally.

A jury trial on all triable issues.

Any other relief this Court deems just, proper, and equitable.

_____
Signature of Plaintiff

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares (or certifies, verifies, or states) under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained therein is true and correct.  28 U.S.C. § 1746.  18 U.S.C. § 1621.

Executed at _____ on _____, 20____.
                              (Location)                                              (Date)

_____
Signature

3